DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Charles M. Russo, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On September 19, 2003, appellant was indicted on charges of driving under the influence ("DUI") in violation of R.C. 4511.19(A)(1) and failure to control in violation of R.C.4511.202. The indictment was the result of an investigation that began when police received a 911 call on August 11, 2003. The caller, later identified as Connie Rhoades, informed the dispatcher that a truck had just hit her house, that the driver was drunk, and that he was attempting to leave the scene. Officers and paramedics responded to the call and found appellant on the scene and bleeding. Officers noted that appellant smelled of alcohol at the scene.
 {¶ 3} Paramedics then attempted to examine appellant due to his apparent injuries. During the brief examination, the paramedic relayed to officers that appellant had admitted to drinking a lot. As a result, officers requested that appellant submit a blood sample while at the hospital. Appellant refused to submit a sample. Thereafter, the above indictment was returned.
 {¶ 4} Prior to trial, Appellant moved to suppress his statements to the paramedic, his statements to the officer, and the contents of the 911 tape. Following a hearing, the trial court denied appellant's motion and the matter proceeded to a bench trial. At the close of the trial, appellant was found guilty on both counts and placed on two years community control. Appellant timely appealed his convictions, raising four assignments of error for review. For ease of analysis, appellant's third and fourth assignments of error have been consolidated.
 II. FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY PERMITTING THE PARAMEDIC TO TESTIFY REGARDING STATEMENTS OBTAINED FROM APPELLANT DURING THE COURSE OF RENDERING HEALTH CARE TREATMENT IN VIOLATION OF APPELLANT'S RIGHTS UNDER FEDERAL LAW."
 {¶ 5} In his first assignment of error, appellant argues that the trial court erred when it failed to exclude the testimony of the on-scene paramedic because such testimony violated appellant's rights under the Health Insurance Portability and Accountability Act ("HIPAA"). This Court disagrees.
 {¶ 6} Appellant urges this Court to find that the trial court erred when it failed to apply the exclusionary rule upon a finding that appellant's rights under HIPAA were violated. This Court, however, finds that HIPAA is inapplicable to the testimony challenged by appellant in the trial court.
 {¶ 7} In the trial court, appellant challenged the testimony of Paramedic Richard Smith, a member of the Stow Fire Department. Appellant, however, failed to establish that HIPAA applied to Smith and the Fire Department.
 {¶ 8} By its own terms, HIPAA applies to the handling of health care information by a "health plan," a "healthcare clearinghouse," or a "healthcare provider who transmits any health information in an electronic form in connection with a transaction referred to in section 1320d-2(a)(1) of this title."42 U.S.C. § 1320d-1(a)(1)-(3). The parties do not dispute that Smith was acting as a healthcare provider when he provided medical treatment to appellant. This Court agrees that Smith was acting as a healthcare provider. See 45 C.F.R. 160.103.
 {¶ 9} However,
"even if the [paramedic and his Department] met the definition of a healthcare provider, there is no evidence in this case that the Department is engaged in the transmission of the health information in `electronic form,' as required for the HIPAA standards to be applicable. If there were any doubt about that statutory requirement, it is eliminated by the implementing regulations. The regulations provide that a `covered entity' includes only those healthcare providers who `transmit any health information in electronic form in connection with a transaction covered by this subchapter,' 45 C.F.R. § 160.103
(emphasis added), and that the restrictions on use or disclosure of health information apply only to a covered entity. See 45 C.F.R. § 164.502(a)." Beard v. Chicago (N.D. Ill., Jan. 10, 2005), Case No. 03C3527.
Similarly here, appellant presented no evidence that Smith or the Stow Fire Department qualify as a covered entity under HIPAA. There is no evidence in the record to support a conclusion that the Stow Fire Department has ever transmitted health information in electronic form. Accordingly, the HIPAA provisions relied upon by appellant are inapplicable. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY ADMITTING THE 911 RECORDING INTO EVIDENCE IN VIOLATION OF APPELLANT'S RIGHT OF CONFRONTATION AS GUARANTEED UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."
 {¶ 10} In his second assignment of error, appellant contends the trial court erred when it refused to exclude the 911 tape during trial because the playing of the tape violated his right of confrontation. This Court disagrees.
 {¶ 11} The Sixth Amendment to the U.S. Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In support of his argument, appellant relies uponCrawford v. Washington (2004), 541 U.S. 36. In Crawford, the U.S. Supreme Court explained that the Confrontation Clause detailed the distinct approaches to be taken regarding statements which are testimonial or nontestimonial:
"Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does [Ohiov. Roberts (1980), 448 U.S. 56], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, theSixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.
However, this Court need not determine whether the 911 call was testimonial as we find the Confrontation Clause jurisprudence contained in Crawford to be inapplicable to the case at hand.
 {¶ 12} In Crawford, the Court held that the Sixth Amendment "is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding." Crawford,541 U.S. at 54. While the Court was not asked to rule on whether excited utterances were admissible, the Court did address such a situation:
"One case arguably in tension with the rule requiring a prior opportunity for cross-examination when the proffered statement is testimonial is White v. Illinois, 502 U.S. 346, 112 S.Ct. 736,116 L.Ed.2d 848 (1992), which involved, inter alia, statements of a child victim to an investigating police officer admitted as spontaneous declarations. Id., at 349-351, 112 S.Ct. 736. It is questionable whether testimonial statements would ever have been admissible on that ground in 1791; to the extent the hearsay exception for spontaneous declarations existed at all, it required that the statements be made `immediat[ely] upon the hurt received, and before [the declarant] had time to devise or contrive any thing for her own advantage.' Thompson v.Trevanion, Skin. 402, 90 Eng. Rep. 179 (K.B. 1694)." (Emphasis in original.) Id. at 58, f.n. 8.
 {¶ 13} This Court finds the above provision to be persuasive. In the above footnote, the U.S. Supreme Court recognized that, to a limited extent, the excited utterance was recognized as a hearsay exception at the time of the founding. The rationale for admitting hearsay statements pursuant to the excited utterance exception is that the declarant is unable, due to the startling event, to reflect on the statement sufficiently to fabricate it.State v. Wallace (1988), 37 Ohio St.3d 87, 88.
 {¶ 14} In the instant matter, it is undisputed that the 911 caller placed the call immediately after a truck struck the side of the house she was visiting. Therefore, the immediacy requirement discussed in Crawford (when citing Trevanion) is present. Accordingly, as the excited utterance exception existed prior to the adoption of the Confrontation Clause, appellant may not rely upon the rule of law announced in Crawford to support exclusion of the 911 tape. Crawford, 541 U.S. at 54. See Statev. Nelson, 1st Dist. No. C-040038, 2004-Ohio-6153, at ¶ 6;State v. Byrd, 160 Ohio App.3d 538, 2005-Ohio-1902, at ¶ 21;State v. Newell, 5th Dist. No. 2004CA00264, 2005-Ohio-2848, at ¶ 23. Contrast, United State v. Arnold (C.A.6, 2005),410 F.3d 895, 900-01 (finding that the State failed to prove the spontaneity requirement to the excited utterance exception to the hearsay rule).[1]
 {¶ 15} However, assuming arguendo that the trial court erred when it failed to exclude the 911 tape, this Court finds any error to be harmless beyond a reasonable doubt. If there is no reasonable possibility that improperly admitted evidence contributed to appellant's conviction, then the admission constitutes harmless error. State v. Elliott (1993),91 Ohio App.3d 763, 771, citing State v. Lytle (1976),48 Ohio St.2d 391.
 {¶ 16} In the instant appeal, appellant challenges his DUI conviction. As noted in response to appellant's third and fourth assignments of error, removing the contents of the 911 tape, the State presented overwhelming evidence in support of appellant's guilt. The 911 caller herself indicates the person who hit the house was drunk. However, she supplies no support for her conclusion. The State's remaining witnesses provided detailed accounts of their observations that supported a finding that appellant was under the influence of alcohol, appellant admitted to drinking, and the State demonstrated appellant's erratic driving prior to the accident. Accordingly, appellant's second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
"APPELLANT'S CONVICTION IN THIS CASE WAS BASED ON INSUFFICIENT EVIDENCE AND, THEREFORE, SHOULD BE REVERSED."
 FOURTH ASSIGNMENT OF ERROR
"THE GUILTY VERDICT IN THIS CASE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND, THEREFORE, MUST BE REVERSED."
 {¶ 17} In his third and fourth assignments of error, appellant asserts that the State produced insufficient evidence to support his DUI conviction and that his conviction was against the manifest weight of the evidence. This Court disagrees.
 {¶ 18} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
"[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
Therefore, this Court will address appellant's assertion that his conviction was against the manifest weight of the evidence first as it is dispositive of appellant's claim of insufficiency.
 {¶ 19} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 20} Appellant was convicted of driving under the influence in violation of R.C. 4511.19(A)(1)(a) which provides, in relevant part:
"No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."
This Court notes that appellant refused to submit to a blood test. "However, R.C. 4511.19(A)(1)(a) does not necessitate any finding of a certain blood alcohol content to support a conviction, but rather only requires evidence that a defendant was operating a motor vehicle while impaired by alcohol." Akronv. Norman, 9th Dist. No. 22743, 2006-Ohio-769, at ¶ 12.
 {¶ 21} In support of its case, the State called Paramedic Richard Smith. Smith testified as follows. Upon questioning appellant, appellant initially indicated that he was not driving. Under subsequent questioning, appellant admitted he was the driver and was alone in the car. Later, Smith questioned appellant regarding whether he had been drinking that night.
The State: "At that time, were you asking him questions related to alcohol consumption?
Smith: "Yes.
The State: "And what was his response?
Smith: "He said that he had lots of drink, and when we asked him what type, he said the hard stuff[.]"
Smith also testified that the curve where the accident occurred was not a dangerous area and that he only witnesses accidents there during inclement weather.
 {¶ 22} The State next presented the testimony of Officer Walter Shields. Officer Shields testified that there was a "[s]trong odor of alcohol coming from his — about his person." Officer Shields continued his testimony by stating that appellant was not subjected to field sobriety tests because of the injuries to his head. The officer then concluded his testimony by stating that appellant refused to submit a blood sample upon request at the hospital.
 {¶ 23} Finally, the State presented the testimony of Officer Daniel Thompson. Thompson testified as follows. Upon arriving on scene, he began to question appellant about the accident. Officer Thompson observed that appellant's eyes were glassy and glazed over. In addition, Officer Thompson detected the smell of alcohol on appellant. Officer Thompson also recognized that appellant appeared disoriented. Appellant informed the officer that he was heading southbound, but pointed north while making the statement.
 {¶ 24} In defense, appellant cross-examined the State's witnesses regarding whether appellant's symptoms were consistent with a concussion. Each State's witness indicated that it was possible to have appellant's symptoms as the result of a concussion.
 {¶ 25} Appellant then testified as follows. He went to a bar after work, arriving at approximately 6:00 p.m. He drank beer at the bar and then left to go home. On his way home, he was talking on his cell phone and lost the call. He glanced down at the phone and lost control of his vehicle when he took his eyes off the road. He then attempted to overcorrect his steering and ultimately collided with a house. In addition, appellant denied making any statements about drinking to the paramedic and denied lying to the paramedic about whether he was driving the truck. Further, appellant's counsel introduced evidence during direct examination of appellant's three prior DUI convictions. Throughout his direct examination, appellant indicated that the night in question was not entirely clear in his mind due to his injuries.
 {¶ 26} On cross-examination, the State elicited the following testimony. Appellant stayed at the bar after work for nearly three hours. Appellant further admitted that he had been drinking beer while at the bar. Additionally, appellant admitted that although he placed the truck in reverse, he ultimately changed his mind about leaving the scene because that was "not the thing to do."
 {¶ 27} Upon reviewing the evidence submitted to the trial court, we cannot say that the trial court lost its way in finding appellant guilty of DUI. Appellant admitted to drinking on the night in question and spending three hours in a bar before attempting to drive home. Smith testified that appellant admitted that he had been drinking a lot on the night in question and was initially dishonest when questioned about whether he was driving. Two officers smelled alcohol on appellant's person, and one officer noted that appellant's eyes were glazed over and glassy. Finally, appellant lost control of his vehicle, overcorrected the steering, drove through a hedge, and struck a house. Appellant contends that the physical observations are explained by his head injuries. However, this Court has stated that "[a] conviction may be upheld even when the evidence is susceptible to some possible, plausible, or even reasonable, theory of innocence." State v.Cremeans, 9th Dist. No. 22009, 2005-Ohio-261, at ¶ 7. Further, appellant's conviction was not against the manifest weight simply because the court chose to believe the prosecution testimony. SeeState v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Appellant's admissions, his erratic driving, his initial dishonesty, and the officers' observations presented substantial evidence that appellant was driving under the influence of alcohol. Accordingly, this Court cannot say that the trial court lost its way in finding appellant guilty of DUI. See Norman,
supra, at ¶ 13-15.
 {¶ 28} Having disposed of appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. See Roberts, supra. Appellant's third and fourth assignments of error are overruled.
 III. {¶ 29} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Slaby, P.J., Moore, J., concur.
[1] This Court notes that the U.S. Supreme Court recently heard argument precisely on the issue this Court must now confront. SeeState v. Davis (2005), 154 Wash.2d 291, certiorari granted (2005) 126 S.Ct. 547; Hammon v. State (Ind. 2005),829 N.E.2d 444, certiorari granted (2005) 126 S.Ct. 552.