DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Dione R. Collins, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} At 11:44 p.m. on June 7, 2006, Akron police officers John Ross and Jude Carroll were dispatched to a traffic accident. Upon arriving at the scene, the officers observed a male lying prone on the street, a damaged motorcycle, and a damaged white Chevy Monte Carlo. No one was in the Monte Carlo when the officers arrived, but several people had gathered near the scene of the accident. The officers first sought to provide aid to the man lying on the street. However, *Page 2 
the officers were unable to detect any breathing sounds and the man, later identified as Richard Roth, was pronounced dead at the scene.
 {¶ 3} Carroll then sought to identify the driver of the Monte Carlo. He approached Collins and asked whether Collins had been driving the car. Collins initially denied that he was the driver, but admitted to that fact moments later. Having observed that Collins' eyes were watery and glassy, that his speech was slurred, and that he smelled of alcohol, Carroll handcuffed him and led him to the police cruiser.
 {¶ 4} While Collins was still in the back seat, Ross got into the front seat of the police cruiser. Collins asked Ross how much time he was going to spend in prison because of the accident. Ross and Carroll then drove Collins to the hospital to have a blood draw performed. After being advised of the consequences of a refusal, Collins refused the blood draw.
 {¶ 5} Roughly two weeks later, Collins was indicted on one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1) and one count of driving under the influence in violation of R.C.4511.19(A)(1)(a). Collins was also indicted for driving under suspension, for driving under a financial responsibility suspension, and for failing to reinstate his driver's license. Prior to trial, Collins pled guilty to the latter three counts in the indictment.
 {¶ 6} On February 26, 2007, the matter proceeded to a jury trial. At the conclusion of the evidence, the jury found Collins guilty of the remaining counts *Page 3 
in the indictment. The trial court then sentenced Collins to a four-year term of incarceration. Collins timely appealed his convictions, raising three assignments of error for review.
 II. ASSIGNMENT OF ERROR I "APPELLANT'S CONVICTIONS FOR AGGRAVATED VEHICULAR HOMICIDE AND OPERATING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW."
 {¶ 7} In his first assignment of error, Collins argues that his convictions were not supported by sufficient evidence. We disagree.
 {¶ 8} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins (1997), 78 Ohio St.3d 380, 386, overruled on other grounds. Accordingly, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found *Page 4 
the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 9} Collins was convicted of driving under the influence in violation of R.C. 4511.19(A)(1)(a) which provides as follows:
 "No person shall operate any vehicle, * * * if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."
Additionally, Collins was convicted of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) which provides as follows:
 "No person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code[.]"
On appeal, Collins challenges whether the State proved that he was under the influence. Collins raises no challenge regarding whether he caused the accident which resulted in Roth's death.
 {¶ 10} Under R.C. 4511.19(A)(1), the state need not prove actual impaired driving; it must only show impaired driving ability. SeeState v. Holland (Dec. 17, 1999), 11th Dist. No. 98-P-0066, at *5.
 "`To prove impaired driving ability, the state can rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired.' Holland, [supra], citing State v. Richards (Oct. 15, 1999), 11th Dist. No. 98-P-0069[.]" State v. Slone, 9th Dist. No. 04CA0103-M, 2005-Ohio-3325, at ¶ 9. *Page 5 
Further, the refusal to take a blood test "may have probative value on the question as to whether [the defendant] was intoxicated at the time of such refusal." Westerville v. Cunningham (1968), 15 Ohio St.2d 121, paragraph one of the syllabus.
 {¶ 11} In support of its case, the State relied upon the testimony of Akron police officers John Ross, Stanley Smith, and Jude Carroll. Ross and Carroll were the first officers to arrive at the scene of the accident, while Smith arrived a short time later.
 {¶ 12} Ross testified that he had limited interaction with Collins at the scene. During that interaction, he noticed that Collins' eyes were glassy and watery. Ross also testified that Collins slurred his speech during their conversation. Ross concluded his testimony by stating that after Collins had been placed in the backseat of the police cruiser, he repeatedly asked how much time he was going to spend in prison for what had occurred.
 {¶ 13} Carroll testified as follows. He was the first to approach Collins at the scene. He singled Collins out from the small crowd at the accident scene because Collins appeared nervous and refused to make eye contact with the officer. Carroll then asked Collins whether he had been driving the Monte Carlo involved in the accident. Collins denied driving the vehicle. Carroll then asked Collins how he had arrived at the scene and Collins did not answer. Carroll then asked again if Collins had been driving the Monte Carlo. Collins then admitted to *Page 6 
being the driver. Carroll stated that, during his conversation with Collins, he observed that Collins' eyes were glassy and watery and that he smelled of alcohol.
 {¶ 14} Next, Smith testified as follows. While he interacted with Collins at the accident scene, he observed that Collins' eyes were bloodshot. Smith also testified that Collins had a strong smell of alcohol and slurred his speech.
 {¶ 15} Along with the officers' observations, the State also presented evidence that Collins had refused to perform field sobriety tests and had refused a blood draw. "[I]t is reasonable to infer that a refusal to take such a test indicates the defendant's fear of the results of the test and his consciousness of guilt[.]" Cunningham,15 Ohio St.2d at 122. Finally, the State presented evidence that Collins had caused the accident by performing either an improper U-turn or by making an improper left turn. (Collins has not challenged the jury's determination that he caused the accident.)
 {¶ 16} In his defense, Collins called his mother, Debra Goodwin. Goodwin testified that her son had one beer prior to leaving her home at 10 or 10:30 on the night of the accident. Goodwin stated that she was certain it was only one beer because that was the only beer in the house. On cross-examination, however, Goodwin admitted that she did not know where Collins was from the time he left the home until the time of the accident, a span of more than an hour.
 {¶ 17} Viewing the evidence in a light most favorable to the State, we cannot say that the jury erred in finding that Collins was driving a car under the *Page 7 
influence of alcohol or drugs. The State presented evidence of each of the physiological factors that accompany alcohol consumption. In addition, the jury was entitled to infer Collins' consciousness of guilt from his refusal to submit to a blood draw and from his repeated questions regarding how much time he was going to spend in prison. The jury also heard evidence that Collins was initially dishonest during his interaction with Carroll, another factor supporting an inference that Collins was conscious of his guilt. See State v. Russo, 9th Dist. No. 22768, 2006-Ohio-2172, at ¶ 27. Finally, as Collins has not challenged the issue of causation on appeal, the jury's determination that Collins caused a fatality supports a finding that he was impaired.
 {¶ 18} Having concluded that the jury did not err in convicting Collins of driving under the influence, we are left with his challenge to his conviction for aggravated vehicular homicide. As noted above, however, Collins has not challenged that he caused the accident resulting in Roth's death. Therefore, our determination that Collins was properly convicted of driving under the influence is dispositive of his challenge to his aggravated vehicular homicide conviction.
 {¶ 19} Collins' first assignment of error lacks merit.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS FOR LACK OF PROBABLE CAUSE, AND TO SUPPRESS ALL STATEMENTS MADE BY APPELLANT PRIOR TO RECEIVING MIRANDA WARNINGS." *Page 8 
 {¶ 20} In his second assignment of error, Collins asserts that the trial court erred in denying his motion to suppress. Specifically, Collins argues that officers lacked probable cause to arrest him and questioned him in violation of his constitutional rights. We disagree.
 {¶ 21} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810, at *1. It follows that this Court's review of a denial of a motion to suppress involves both questions of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. As such, this Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741. However, the application of the law to those facts will be reviewed de novo. Id.
Probable Cause {¶ 22} This Court has held that "[p]robable cause [to] arrest for driving under the influence exists if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19." (Internal quotations omitted.) In re V.S., 9th Dist. No. 22632, 2005-Ohio-6324, at ¶ 13, quoting State v. Gunther, 4th Dist. No. 04CA25, 2005-Ohio-3492, at ¶ 20. To establish probable cause, "the arrest merely has to be supported by the arresting officer's observations of indicia *Page 9 
of alcohol consumption and operation of a motor vehicle while under the influence of alcohol." State v. Buehl (Jan. 26, 2000), 9th Dist. No. 19469, at *3.
 {¶ 23} "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered * * *." State v. Homan (2000), 89 Ohio St.3d 421, 427, superceded on other grounds by statute as recognized in State v.Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37. Accordingly, "the standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires `only a showing that a probability of criminal activity exists.'" State v. Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 8, quoting State v. Young (2001),146 Ohio App.3d 245, 254.
 {¶ 24} As indicated above, officers Ross and Carroll observed physiological signs that indicated that Collins had consumed alcohol. Collins' eyes were glassy and watery, his speech was slurred, and he had the smell of alcohol on his person. In addition, Collins was initially dishonest when responding to questions about his involvement in the accident. Under the totality of the evidence, we cannot say that the trial court erred in determining that the officers were justified in concluding that there was a probability that Collins had violated R.C.4511.19(A).
Miranda {¶ 25} On appeal, Collins challenges the admission of "any post-arrest statements, primarily the refusal to perform field sobriety tests, the refusal to allow *Page 10 
a blood test, and the alleged questions regarding the possibility of prison." We find no error in the admission of these statements.
 {¶ 26} With respect to Collins' challenge to the State's use of his refusal to submit to field sobriety tests and a blood draw, we find thatMiranda and its progeny are inapplicable. "In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of Miranda." South Dakota v. Neville (1983), 459 U.S. 553, 564, fn. 15. "Testimony regarding such tests * * * [is] not subject to exclusion by reason of the failure to advise the accused of his constitutional rights as required by Miranda * * * and [is] admissible in evidence irrespective of whether such advice is given." Piqua v.Hinger (1968), 15 Ohio St.2d 110, paragraph two of the syllabus. Consequently, Collins' challenge to the admissibility of these statements lacks merit.
 {¶ 27} On appeal, Collins also challenges the admissibility of his statements to Officer Ross. Specifically, Collins asserts that it was error to permit Ross to testify that Collins had asked how much time he was going to spend in prison as a result of the accident. Collins, however, waived any error in the admission of these statements.
 {¶ 28} Waiver is the intentional relinquishment or abandonment of a right, and waiver of a right "cannot form the basis of any claimed error under Crim.R. 52(B)." State v. McKee (2001), 91 Ohio St.3d 292, 299, fn. 3 (Cook, J., *Page 11 
dissenting); see, also, United States v. Olano (1993), 507 U.S. 725,733. During his trial, Collins' counsel stated as follows:
 "We will specifically waive any appellate issues or other issues that we might have in connection with Officer Ross' testimony as it relates to an alleged statement made by our client in the back of the cruiser wherein he said something to the effect of how much time am I going to serve because of what happened or what I did here."
The trial court then asked Collins whether he wished to waive this issue and Collins indicated that he wished to waive the issue. Consequently, the issue cannot be raised herein.[1]
 {¶ 29} Collins' second assignment of error lacks merit.
 ASSIGNMENT OF ERROR III "APPELLANT WAS DENIED HIS CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT ALLOWED PROSECUTORIAL MISCONDUCT IN COMMENTING ON APPELLANT'S EXERCISE OF HIS RIGHT NOT TO TESTIFY AND RIGHT TO REMAIN SILENT."
 {¶ 30} In his final assignment of error, Collins contends that the State engaged in prosecutorial misconduct during its closing argument. We disagree.
 {¶ 31} The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct. SeeState v. Lott (1990), 51 Ohio St.3d 160, 166. The analysis of cases alleging prosecutorial *Page 12 
misconduct focuses on the fairness of the trial and not the culpability of the prosecutor. Id. A reviewing court is to consider the trial record as a whole and is to ignore harmless errors "including most constitutional violations." Id., quoting United States v. Hasting
(1983), 461 U.S. 499, 508-509. Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial. State v. Carter (1995),72 Ohio St.3d 545, 557.
 {¶ 32} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a reviewing court must determine if the remarks were improper, and, if so, whether they actually prejudiced the substantial rights of the defendant." State v. Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 47, citing State v. Smith (1984),14 Ohio St.3d 13, 14. "Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." State v.Hill (1996), 75 Ohio St.3d 195, 204, citing Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647. Furthermore, the appellant must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. State v. Loza (1994), 71 Ohio St.3d 61, 78, overruled on other grounds.
 {¶ 33} In his final assignment of error, Collins argues that the State improperly infringed on his right to remain silent. We disagree. *Page 13 
 {¶ 34} Collins is correct in his assertion that the State may not use his post-arrest silence against him. See, e.g., State v. Rogers (1987),32 Ohio St.3d 70. However,
 "[t]he comments were not directed to appellant's failure to take the witness stand, but were instead directed to the fact that appellant's counsel's arguments were not evidence. Where a defense attorney remarks upon what the defendant might say, or might have said on the witness stand, a prosecuting attorney may remind the jury that the remarks are not evidence." State v. Wheeler (June 3, 1992), 4th Dist. No. 91 CA 9, at *2.
As in Wheeler, the State herein made it clear that it was not attempting to use Collins' silence against him.
 {¶ 35} In his opening statement, Collins' counsel stated as follows:
 "The Defendant in this case will explain to you why it is that he refused the administration of those two tests[.]"
In its closing argument, the prosecution stated as follows:
 "And keep in mind, keep in mind in opening statement Defense counsel got up and told you what the Defendant was going to do and it was my impression * * * that the Defendant was going to tell you why he did what he did."
The court then interjected and reminded the jury that opening statements are not evidence. The State then continued as follows:
 "I was under the impression that we were going to hear why he refused and why he did the things he did and obviously the Defendant, and I can't reiterate this enough, has a right to remain silent at trial. He has that right. He doesn't have to testify because it's my burden[.]" (Emphasis added.) *Page 14 
The prosecution then went on to state that its concern was that the defense's opening statement was "lingering out there."
 {¶ 36} We find no misconduct in the above argument. The State did not attempt to use Collins' silence against him. To the contrary, the State made clear that its statements should not be interpreted in that manner and that its statements were only made in response to the opening statement made by Collins' counsel.
 {¶ 37} Collins' remaining arguments focus on the State's argument surrounding his refusal to submit to field sobriety tests and a blood draw. As indicated above, Collins' rights are not infringed upon when the State discusses his refusal to submit to blood tests. SeePiqua, supra.
 {¶ 38} Collins' final assignment of error lacks merit.
 III. {¶ 39} Collins' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into *Page 15 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, P. J. DICKINSON, J. CONCUR.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] Even if we were to consider the issue, it lacks merit. Collins' statements were not in response to questioning, but were volunteered statements. Therefore, there is no basis for suppressing those statements. See State v. McGuire (1997), 80 Ohio St.3d 390, 401. *Page 1