DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Cortney Stowers, appeals from her convictions in the Wayne County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On July 11, 2006, Officer Quinn McConnell was observing a home located at 2109 Cleveland Road based upon information he had received about possible drug activity. While observing the home, McConnell witnessed a maroon van stop at the rear of the residence for a short period of time and then leave. McConnell stopped the van and found cocaine on the driver's person. The driver then informed McConnell that she had purchased the cocaine from one of the *Page 2 
home's residents, Michael Flowers. McConnell then went through the process of obtaining a search warrant for the residence.
 {¶ 3} While McConnell was finalizing the search warrant, other officers observed a gold vehicle stop at the residence for a short period of time and then leave. While delivering the warrant to the home, McConnell executed a traffic stop on this vehicle. Two of the three occupants fled the car, but both were apprehended. Along the chase route, McConnell recovered cocaine.
 {¶ 4} Also prior to the search warrant being delivered, officers executed a traffic stop on another car that left the residence. Officers identified the driver of that vehicle as Flowers and the passenger identified himself as Kelvin Pierce. After these traffic stops and arrests, Officer McConnell continued on to the home to serve the warrant. Prior to his arrival, other officers witnessed Stowers' car leave the address.
 {¶ 5} McConnell arrived a short time later and officers searched the home. The upper level of the home had three bedrooms spaced along a hallway. In the hallway was an attic access that was roughly two feet by two feet. In the bedrooms belonging to Pierce and Flowers, officers found burnt spoons with cocaine residue on them and digital scales. In Pierce's room, officers also found a safe that smelled like marijuana. In Stowers' room, officers found a digital scale, $794 cash, a small amount of marijuana, rolling papers, and two collections of coins. Officers also searched the attic, finding two large quantities of cocaine, *Page 3 
digital scales, baggies, several guns, and a coffee grinder with cocaine residue inside of it. Shortly after officers began searching the home, Stowers returned to the address wearing only a bath robe. Stowers eventually admitted that the safe officers found belonged to her and assisted in opening it. Inside the safe, officers found a small amount of marijuana.
 {¶ 6} Based upon the above facts, Stowers was charged with the following: one count of trafficking in cocaine in violation of R.C.2925.03(A)(2); one count of possession of cocaine in violation of R.C.2925.11(A); and one count of possession of a dangerous ordnance in violation of R.C. 2923.17(A). Stowers pled not guilty to the charges and the matter proceeded to a jury trial. On March 13, 2007, the jury found Stowers guilty of drug possession and drug trafficking, but not guilty of possessing a dangerous ordnance. Thereafter, the trial court sentenced Stowers to an aggregate term of one year in prison. Stowers timely appealed her convictions, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR
 "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICTS OF GUILTY AS TO THE TRAFFICKING IN COCAINE AND POSSESSION OF COCAINE COUNTS OF THE INDICTMENT, AND THOSE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 4 
 {¶ 7} In her sole assignment of error, Stowers argues that her convictions were supported by insufficient evidence and against the manifest weight of the evidence. This Court disagrees.
 {¶ 8} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Page 5 
(Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
Accordingly, we address Stowers' challenges to the weight of the evidence first, as they are dispositive of her claims of sufficiency.
 {¶ 9} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
Possession of cocaine {¶ 10} Stowers was convicted of possession of cocaine in violation of R.C. 2925.11(A) which provides as follows: *Page 6 
 "No person shall knowingly obtain, possess, or use a controlled substance."
Stowers contends that the State failed to prove that the cocaine belonged to her and, therefore, failed to prove the essential elements of drug possession.
 {¶ 11} Possession is defined as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). R.C. 2901.21(D)(1) sets forth the requirements for criminal liability and provides: "Possession is a voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession."
 {¶ 12} Possession however, need not be actual; it may be constructive.State v. Kobi (1997), 122 Ohio App.3d 160, 174. Constructive possession will be found when a person knowingly exercises dominion or control over an item, even without physically possessing it. State v. Hankerson
(1982), 70 Ohio St.2d 87, syllabus. While mere presence in the vicinity of the item is insufficient to justify possession, ready availability of the item and close proximity to it support a finding of constructive possession. See State v. Haynes (1971), 25 Ohio St.2d 264, paragraph two of the syllabus; State v. Riley (Nov. 21, 2001), 9th Dist. No. 20618. Furthermore, since ownership need not be proven to establish constructive possession, State v. Mann (1993), 93 Ohio App.3d 301, 308, multiple persons may *Page 7 
constructively possess the same thing. State v. Galindo (July 9, 1999), 6th Dist. No. L-98-1242.
 {¶ 13} The Ohio Supreme Court has held that knowledge of contraband in one's home is sufficient to show constructive possession.Hankerson, 70 Ohio St.2d at 91; see, also, State v. Owens, 9th Dist. No. 23267, 2007-Ohio-49, at ¶ 23, citing Hankerson, 70 Ohio St.2d at 91;State v. Molina, 8th Dist. No. 83731, 2004-Ohio-4347, at ¶ 29 (stating "[i]t would have been difficult, if not impossible, for appellant not to have been aware of any activity going on in the apartment." (Emphasis omitted.)). In Hankerson, the Court relied on the homeowner's dominion and control over the premises, the facts of normal home occupancy, and testimony that the contraband was in plain view to conclude that the jury had sufficient circumstantial evidence to infer that the appellants knew that contraband was located in the home. Hankerson,70 Ohio St.2d at 91.
 {¶ 14} In the instant matter, officers found drugs or drug paraphernalia in all three bedrooms of the home and in the home's attic. While no cocaine was found in the bedroom used by Stowers, a digital scale with "powder residue" was recovered from inside the dresser in her room. Furthermore, Officer Matthew Smucker testified that the items retrieved from the attic appeared to have recently been placed there. Specifically, Officer Smucker stated that other items in the attic were covered in dust and soot, but that the seized items were not. As a result, *Page 8 
Officer Smucker concluded that it was likely that the seized items had recently been moved from the living area of the home to the attic.
 {¶ 15} In addition to the significant amount of cocaine and drug paraphernalia found throughout the house, the State produced other evidence which supports a conclusion that Stowers constructively possessed the cocaine. First, during the few hours that officers observed the home prior to getting a search warrant, they witnessed two individuals make "short stops" at the home. Officers indicated that these "short stops" were often signs of drug dealing. When the individuals who had stopped at the home were later stopped by police, each possessed cocaine. A young woman who was stopped indicated that she had purchased the cocaine from Flowers at the house in question. During both of these "short stops," Stowers' vehicle was parked at the house. The jury, therefore, could infer that she was present during the drug deals.
 {¶ 16} The State also produced evidence that the house had a police scanner set to the same frequency as that utilized by local law enforcement. Officer Quinn McConnell testified that he used the address in question over this frequency several times during the day before the search warrant was executed. Officer McConnell also testified that drug dealers often use these scanners to avoid police searches. Evidence was also introduced that Stowers left the house shortly before the warrant was executed wearing only a bath robe. Stowers then returned to the home, roughly five to ten minutes after the search began. At that time, Stowers *Page 9 
indicated that she knew that officers were searching the residence. Based upon these facts, the jury could properly infer that Stowers had used the scanner in an attempt to conceal her criminal activities.
 {¶ 17} On appeal, Stowers has argued at length that her physical size prevented her from accessing the attic where a bulk of the cocaine was located.[1] This argument suffers from two flaws. First, there is nothing to suggest that Stowers could not have placed the drugs through the attic entryway without actually climbing through that entryway. Furthermore, Officer Smucker indicated that the drugs appeared to have only recently been placed in the attic. Officer Smucker indicated that it was extremely uncommon for drug dealers to keep their drugs in a place like the attic because it makes it difficult to complete sales in a timely manner. As a result, Officer Smucker concluded that it was likely that the drugs had previously been located in the living area of the house.
 {¶ 18} Based on the totality of the evidence presented, we cannot say that the jury lost its way in concluding that Stowers constructively possessed cocaine. The house had drugs or drug paraphernalia in four different rooms, including Stowers' bedroom. Numerous drug deals took place while Stowers' car was present at the home. A scanner was set to the same frequency as local law enforcement, and Stowers left the home not fully dressed shortly before the search *Page 10 
warrant was executed and returned with knowledge of the officers' activities. Based upon those facts, a jury could properly conclude that Stowers constructively possessed the cocaine in the home.
Trafficking in cocaine {¶ 19} Stowers was convicted of trafficking in cocaine in violation of R.C. 2925.03(A)(2) which provides as follows:
 "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
In her argument, Stowers again argues that there is no direct evidence that she engaged in selling cocaine. Stowers, however, has ignored the substantial circumstantial evidence introduced by the State.
 {¶ 20} In addition to seizing the cocaine, the State seized digital scales, baggies, and a coffee grinder with cocaine residue in it. Officers testified that the digital scales and baggies were normal tools associated with drug trafficking. In addition, Charles Ellis of the Medway Drug Enforcement Agency explained the significance of the form of the cocaine and the coffee grinder. Ellis explained that the seized cocaine was in "chunk" form. Ellis testified that this usually results from the cocaine having been purchased from a larger kilogram. Ellis stated that this form of cocaine is rarely purchased for personal use. Moreover, Ellis *Page 11 
indicated that the coffee grinder was then used to make the "chunk" form into the powder form of cocaine more commonly sold by dealers.
 {¶ 21} While these items were each located in the attic, the State also introduced circumstantial evidence directly linked to Stowers. In Stowers' bedroom, officers located $794 in a dirty pair of jeans. Officer Donald Hall indicated the money was sorted by denomination, a trait common among drug dealers. In addition, officers testified that drug dealers often leave large sums of cash in dirty laundry under the belief that officers will not search such places for it. This sizeable amount of money was recovered from jeans in Stowers' bedroom despite the fact that her job paid only $6.25 per hour and issued her weekly pay checks.
 {¶ 22} Officers also located two different collections of coins in Stowers' bedroom. Officers described the coins as atypical. Specifically, officers stated that the coins were rare or antique. During his testimony, Ellis indicated that it was not uncommon to recover coins of this type from drug houses. Ellis indicated that the drug business often uses a barter system and as a result, drug users often steal items, including coins, and then trade them for drugs.
 {¶ 23} Finally, we also note that Stowers was initially dishonest with Officer McConnell when the home was being searched. Upon retrieving a small safe that smelled like marijuana, McConnell asked if it belonged to Stowers. Stowers initially denied ownership before admitting the safe was hers. From this *Page 12 
initial dishonesty, the jury was entitled to infer Stowers' was conscious of her guilt. See State v. Collins, 9th Dist. No. 23622,2007-Ohio-5674, at ¶ 17.
 {¶ 24} Based upon the above, we cannot say the jury verdict was against the weight of the evidence. Bulk quantities of drugs, the machine necessary to make the drugs usable, digital scales, and baggies were each located in the attic. Nearly $800 in cash was found in Stowers' bedroom, sorted by denomination in the pockets of dirty laundry. Moreover, coins often used to barter for drugs were found in her bedroom. Consequently, we cannot say that the jury lost its way when it concluded that Stowers trafficked in cocaine.
 {¶ 25} Having disposed of Stowers' challenges to the weight of the evidence, we similarly dispose of her sufficiency challenges. SeeRoberts, supra.
 {¶ 26} Stowers' sole assignment of error is overruled.
 III. {¶ 27} Stowers' sole assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal. We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into *Page 13 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
[1] One witness described Stowers as roughly five foot, two inches tall and 250 to 280 pounds and "[t]wo and half feet wide."
DONNA J. CARR FOR THE COURT
WHITMORE, J. CONCURS