[Cite as *State v. Mohamed*, 2012-Ohio-3636.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 11CA0050-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| HERSI O. MOHAMED | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 09-CR-0265 |

DECISION AND JOURNAL ENTRY

Dated: August 13, 2012

CARR, Judge.

{¶1} Appellant Hersi Mohamed appeals his conviction in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Mohamed was indicted on one count of possession of drugs, specifically cathinone, a Schedule I controlled substance. The jury found him guilty after trial, and the trial court sentenced him to ten months incarceration. Mohamed filed a timely appeal. We rearrange his assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR II**

THE STATE OF OHIO FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION IN VIOLATION OF THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶3} Mohamed argues that his conviction was not supported by sufficient evidence. This Court disagrees.

{¶4} The law is well settled:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Galloway*, 9th Dist. No. 19752, 2001 WL 81257 (Jan. 31, 2001) quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶5} The test for sufficiency requires a determination of whether the State has met its burden of production at trial. *State v. Walker*, 9th Dist. No. 20559, 2001 WL 1581570 (Dec. 12, 2001); *see, also*, *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook, J., concurring).

{¶6} Mohamed was convicted of possession of cathinone in violation of R.C. 2925.11(A)/(C)(1)(a), which states: "No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2901.22(B) states: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Cathinone is a Schedule I controlled substance and is identified as a stimulant. R.C. 3719.41(E)(2).

{¶7} Mohamed argues that the State presented insufficient evidence to demonstrate that he knew that the substance (leaves) he possessed in his car contained cathinone because he believed the leaves were "garabo" rather than "khat." There is no dispute that khat is a plant that contains cathinone at certain times. Mohamed raised mistake of fact as a defense to the charge

and here argues that the evidence of his mistake of fact precluded the State from presenting sufficient evidence in support of his conviction. "A review for sufficiency of the evidence does not apply to affirmative defenses, because this review does not consider the strength of defense evidence." *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831, ¶ 21, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37. Because the claim of insufficient evidence challenges the sufficiency of the State's evidence, Mohamed cannot challenge the jury's rejection of his defense of mistake of fact on the basis of insufficiency of the evidence. *See Campbell* at ¶ 21, citing *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, ¶ 15 (4th Dist.) ("An affirmative defense does not negate the legal adequacy of the state's proof for purposes of submitting it to the jury.").

{¶8} At trial, Deputy Paul Schismenos of the Medina County Sheriff's Office testified that he conducted a traffic stop of the van Mohamed was driving after observing two traffic violations. After approaching the van, Deputy Schismenos saw a pile of green vegetable matter he believed, based on his training and experience, to be khat. He described khat as a plant commonly grown in Africa and which contains an illegal stimulant called cathinone. The deputy testified that cathinone dissipates from the khat depending on how the plant has been harvested and maintained. He clarified that it is not a fair assumption that cathinone dissipates in a matter of days, rather than weeks or months or years. He testified that khat is shipped into the United States and disbursed through illegal warehouses to Ohio, including Columbus; Minnesota; New York; and other areas with Somali cultures. He testified it is commonly used by certain ethnic groups. The deputy testified that the stimulant is ingested by chewing, brewing, or smoking the khat.

{¶9} Deputy Schismenos asked Mohamed if he knew what khat was. While Mohamed asserted that he did, he denied that the substance on his floorboard was khat. Rather, he asserted it was "garabo." Mohamed further described khat as "a bundle," while garabo was "dried leaves." He told the deputy that he did not ever try to learn whether it was legal or not to possess khat in the United States. Mohamed told the deputy that a friend in Columbus, whom he could not identify, gave him the garabo three months earlier. He also told the deputy that "[e]verybody in Columbus has it." Mohamed admitted that he chews and brews the type of leaves he had in the van. He further informed the deputy that he accidentally spilled them on the floorboard. Deputy Schismenos found that assertion "unusual" because he found a plastic bag containing the same type of leaves behind and partially underneath the driver's seat, as if Mohamed had attempted to hide the leaves. The deputy testified that it would have made more sense for Mohamed, assuming he did not believe the leaves contained an illegal substance, to keep the bag in an easily accessible location so he could collect what he had spilled.

{¶10} Deputy Schismenos testified that Mohamed told him that he and his female passenger were driving from Columbus to New York City to meet with a long-time acquaintance he knew only as "Number." Mohamed further did not know where Number lived or where they would meet because he had been directed to simply call this man when he arrived in Harlem for details. The deputy testified that, based on his experience, it is typical in criminal interdiction investigations, i.e., investigations regarding banned substances, to learn that people involved in buying illegal items or narcotics are directed to a general location and only learn the specific location once they call a contact upon arriving in the general location.

{¶11} An audiotape of the discussion between Deputy Schismenos and Mohamed confirmed the deputy's testimony regarding Mohamed's statements. Deputy Schismenos further collected the vegetation from Mohamed's car for later analysis.

{¶12} Jennifer Acurio is a forensic scientist in the drug chemistry section of the Ohio Bureau of Criminal Identification and Investigation. She testified that cathinone is a Schedule I stimulant drug that comes from a plant commonly known as khat. She described the effect on the body as similar to the effect of cocaine in that it excites the systems in the body. Although Ms. Acurio testified that the cathinone in khat dissipates within 10 days if the plant is merely pulled out of the ground, she testified that the cathinone is maintained if the plant is dried or frozen. She testified that one would know whether or not the leaves contained cathinone by chewing them because of the effect on the body. Ms. Acurio testified that khat is usually shipped to the United States in bundles with leaves and stalks intact, while its dried state consists of leaves only.

{¶13} Ms. Acurio testified that she stored the substance sent to her from the Sheriff's office in a freezer before testing it to minimize the risk of losing the quality of the plant. When analyzing the substance, she performed a microscopic test and color test to exclude marijuana as a result. She then performed a preliminary test and a confirming test with a gas chromatograph/mass spectrometer. Both tests indicated that the substance was positive for the presence of cathinone.

{¶14} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the charge of possession of cathinone were proved beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The State presented evidence that Mohamed had and was

chewing a substance that contained cathinone. Accordingly, the State presented sufficient evidence of the crime of possession of cathinone. Mohamed's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS.

{¶15} Mohamed argues that his conviction was against the manifest weight of the evidence. This Court disagrees.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id*.

*State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶ 5.

{¶16} This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶17} Deputy Schismenos testified that Mohamed denied that the substance found in his van was khat, but admitted that it was something called garabo. Mohamed described khat as a

"bundle" and garabo as "dried leaves." Mohamed further denied being under the influence of any drug at the time of the stop.

{¶18} Ms. Acurio identified khat as the plant in which cathinone is found and testified that it is transported in "bundles" containing leaves and stalks, while only the leaves are later dried.

{¶19} Benjamin Corpus, a forensic pharmacology toxicologist at Toxicology Associates in Columbus, testified for the defense. Mr. Corpus testified that he also analyzed the substance taken from Mohamed's van and confirmed that it tested positive for cathinone. He tested the substance more than a year after the deputy collected it from the van. Mr. Corpus was hesitant to identify the leaves as being from a khat plant, although he testified that he understood khat to be a slang term for cathinone. He described cathinone as a type of hallucinogen, similar in effect to marijuana. He testified that he "imagine[d]" that smoking was a better way than chewing to feel the effects of cathinone, while brewing would be an ineffective method because it would be too difficult to acquire the proper combination of solubility and volatility. He admitted that he did not attempt to become an expert on khat for purposes of this trial. Rather, he was merely hired to analyze the substance provided to him.

{¶20} A thorough review of the record indicates that this is not the exceptional case where the evidence weighs heavily in favor of Mohamed. The weight of the evidence supports the conclusion that the vegetable matter found in Mohamed's van contained cathinone and that he knew that it did. Deputy Schismenos initiated a traffic stop of Mohamed's van. Mohamed admitting spilling the leaves on the floorboard and putting the plastic bag containing the remaining leaves behind and under his seat. The reasonable inference was that he was attempting to hide the leaves, something he would not have to do if he believed the substance

was legal. Mohamed was evasive about the nature of khat, telling the deputy that everybody in Columbus has it and that he never bothered to find out whether it is legal or not. He identified the substance found in his car as garabo, i.e., dried leaves, while he asserted that khat was a "bundle." Ms. Acurio testified that khat is transported in bundles, while only the leaves are processed by drying. Mohamed and his passenger were driving from Columbus to New York, and he was chewing the leaves found in the van. Cathinone is a stimulant. The reasonable inference was that he was using the stimulant to enable him to stay awake and alert while driving. Moreover, he was driving to meet a long-time acquaintance whom he knew only as "Number" at a location to be determined only upon his arrival in New York. Deputy Schismenos testified that such behavior typically indicates, in his experience, involvement in the possession of illegal substances. Mohamed offered no justification for his possession of the dried leaves which contained cathinone; rather, he merely denied that they were "khat." Upon review, the weight of the evidence supports the conclusion that Mohamed knowingly possessed cathinone. Accordingly, his conviction for possession of cathinone is not against the manifest weight of the evidence. Mohamed's third assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT FAILED TO ORDER A MISTRIAL, BASED UPON THE PROSECUTOR'S COMMENTS.

{¶21} Mohamed argues that the trial court erred by failing to order a mistrial based on improper comments by the State. This Court disagrees.

{¶22} Mohamed did not move the trial court for a mistrial. This Court has long held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[]" at a time when the trial court might have corrected the error. *State v. Dent*, 9th Dist. No. 20907, 2002-Ohio-4522, ¶ 6. "[F]orfeiture is a failure to preserve an

objection[.] *** [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B)." (Internal citations omitted.) *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23. By failing to raise the issue below, Mohamed has forfeited his challenge to the trial court's failure to grant a mistrial for all but plain error.

{¶23} We construe his argument as one in which he asserts that the trial court committed plain error by failing to sua sponte grant a mistrial based upon the prosecutor's comments. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, ¶ 12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless Mohamed has established that the outcome of the trial clearly would have been different but for the alleged error. *State v. Kobelka*, 9th Dist. No. 01CA007808, 2001 WL 1379440 (Nov. 7, 2001), citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

{¶24} In reviewing the trial court's decision to sua sponte grant or fail to grant a mistrial, this Court considers the following factors, specifically, whether: "(1) there [was] a manifest necessity or a high degree of necessity for ordering a mistrial, or (2) the ends of public justice would otherwise be defeated." (Internal quotations omitted.) *State v. Ross*, 9th Dist. No. 20980, 2002-Ohio-7317, ¶ 22, quoting *State v. Widner*, 68 Ohio St.2d 188, 189-190 (1981), citing *Arizona v. Washington*, 434 U.S. 497 (1978). The reviewing court considers these factors "in light of all the surrounding circumstances[.]" *Ross* at ¶ 22, quoting *Widner*, 68 Ohio St.2d at 190.

{¶25} Mohamed first argues that a mistrial was warranted because the prosecutor commented during closing argument on his failure to testify about where he obtained the leafy vegetable matter found in his van. The prosecutor stated, "He can't tell you where he got it.

Actually, he won't tell you where he got it. It's not that he can't, it's he won't tell you where he got it, what the name of the person is." After defense counsel objected, the trial court immediately gave a curative instruction, reminding the jury of the court's prior instruction that the defendant did not have to testify. The trial court further instructed the jury that Mohamed had the right not to testify and that the fact that he did not testify could not be considered for any purpose. Moreover, the prosecutor apologized profusely for misspeaking. The prosecutor echoed the court's curative instructions, saying, "Ladies and Gentlemen, I didn't mean he wouldn't tell you. It is absolutely his right not to testify. We all know that. That wasn't what my comment was meant to be."

{¶26} The prosecutor inadvertently got off track during his closing argument and misspoke. The trial court immediately issued a curative instruction. The Ohio Supreme Court has recognized that "a brief and isolated remark that was followed by a curative instruction" will likely not implicate unfair prejudice requiring a mistrial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 175, citing *State v. Garner*, 74 Ohio St.3d 49 (1995). Moreover, in this case, the prosecutor apologized, reiterated the court's curative instructions, and clarified the point he previously inartfully made. In light of these circumstances, Mohamed did not suffer unfair prejudice which gave rise to a manifest or high degree of necessity for ordering a mistrial. He has not demonstrated that the results of the trial would have been different but for the prosecutor's comments. Accordingly, the trial court's failure to sua sponte grant a mistrial did not defeat the ends of public justice.

{¶27} Second, Mohamed argues that the prosecutor's comment during closing argument that "khat" and "garabo" are synonyms deprived him of a fair trial. It is well settled that closing arguments are not evidence. *State v. Frazier*, 73 Ohio St.3d 323, 338. The trial court instructed

the jury in that regard. There is a presumption that the jury follows the instructions given by the judge. *State v. Twyford*, 94 Ohio St.3d 340, 356. Accordingly, Mohamed has not demonstrated that the outcome of the trial would have been different but for the prosecutor's comment or that the comment gave rise to a manifest necessity requiring a mistrial. Mohamed's first assignment of error is overruled.

### III.

**{¶28}** Mohamed's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.


APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.