[Cite as *State v. Baker*, 2020-Ohio-19.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

CHRISTOPHER BAKER

    Appellant

C.A. No.    29167

APPEAL FROM JUDGMENT
ENTERED IN THE
AKRON MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE No.    18TRC05589

DECISION AND JOURNAL ENTRY

Dated: January 8, 2020

---

TEODOSIO, Presiding Judge.

{¶1} Appellant, Christopher Baker, appeals from his conviction for operating a vehicle while under the influence of alcohol ("OVI") in the Akron Municipal Court. This Court affirms.

I.

{¶2} Mr. Baker was charged with OVI under R.C. 4511.19(A)(1)(a) as well as speeding. Following a trial, a jury found him guilty of OVI and the trial court found him guilty of speeding. The court sentenced him to 180 days in jail for OVI, but suspended 177 days and permitted him to attend a three-day driver intervention program in lieu of serving three days in jail. The court further ordered a 12-month license suspension and a $375.00 fine. The court also ordered a $50.00 fine for speeding. The court granted Mr. Baker a stay of execution of his sentence.

{¶3} Mr. Baker now appeals from his OVI conviction and raises three assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

MR. BAKER'S CONVICTION FOR OVI IS AGAINST THE SUFFICIENCY OF THE EVIDENCE.

{¶4} In his first assignment of error, Mr. Baker argues that his OVI conviction is not supported by sufficient evidence. We disagree.

{¶5} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶6} Mr. Baker was convicted of OVI under R.C. 4511.19(A)(1)(a), which states: "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * the person is under the influence of alcohol * * *." This Court has defined "under the influence" as "[t]he condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle." *Akron v. Foos*, 9th Dist. Summit No. 28086, 2016-Ohio-8441, ¶ 5.

{¶7} Trooper Nathan Sweazy of the Ohio State Highway Patrol ("OSHP") testified at trial as to his training and experience, which includes OVI-specific training and annual updates. He testified that, on April 6, 2018, at approximately 3:30 A.M., he was on duty and traveling on Brittain Road, near Eastwood and Eastland Avenues, in Akron, Ohio. He was accompanied by Sergeant Grim, who was conducting a "supervisor ride-along." Trooper Sweazy noticed a vehicle coming toward him at a high rate of speed, so he activated his front radar unit and clocked the vehicle at 64 miles per hour ("mph") in a 35 mph zone. The trooper turned around and followed the vehicle, which then failed to use its turn signal during a right-hand turn onto Eastland Avenue. Trooper Sweazy activated his overhead lights and conducted a traffic stop of the vehicle. The entire incident was captured on the trooper's dash cam video, which was entered into evidence at trial.

{¶8} Trooper Sweazy spoke to the sole occupant of the vehicle ("Mr. Baker") and testified that he noticed an odor of alcohol emitting from the vehicle. He testified that during their conversation Mr. Baker said he was dropping some friends off and did not think he was "going that fast." Mr. Baker admitted to the trooper that he was coming from a bar and admitted drinking two Miller Lites before he left. In the dash cam video, the trooper can be heard asking Mr. Baker to step out of the vehicle because he "[could] smell a little bit of alcohol coming from the vehicle." On re-cross examination, the trooper testified that characterizing the odor as "a little bit of alcohol" while speaking to Mr. Baker was simply "casual conversation." Upon further redirect examination, the trooper reviewed his report from the incident and testified that he noted in the report the odor of alcohol was "strong."

{¶9} Once out of the vehicle, the trooper asked Mr. Baker to turn around and face him for field sobriety testing, but Mr. Baker can be seen in the video placing his hands on the hood of

the trooper's cruiser instead. The trooper testified that Mr. Baker "was having a little bit of a hard time concentrating" and his eyes were glassy and bloodshot throughout the encounter. On redirect examination, the trooper testified that the odor of alcohol was "still strong when [he] was standing outside of the vehicle * * * speaking with [Mr. Baker]."

{¶10} Trooper Sweazy testified that Mr. Baker performed poorly on the field sobriety tests. During the horizontal gaze nystagmus ("HGN") test, Mr. Baker can be seen in the video moving his head around, and the trooper has to repeatedly instruct him to keep his head still. The trooper testified that he observed six out of six clues during the HGN test. Next, at the outset of the walk and turn test, the trooper told Mr. Baker to put his left foot down with his right foot forward, and likewise demonstrated the act. Mr. Baker instead places his right foot down with his left foot forward, and the trooper has to correct him. Mr. Baker then begins walking, and the trooper has to stop him so he can finish giving the test instructions. As the trooper attempts to provide the instructions, Mr. Baker can be seen and heard in the video constantly interrupting and talking over the trooper. The trooper testified that, during the test, not all of Mr. Baker's steps were performed heel-to-toe. Furthermore, although instructed to only take nine heel-to-toe steps, Mr. Baker takes nine steps, stops, and asks, "Should I do more or turn around?" The trooper says that is all he had to do, but Mr. Baker resumes the test anyway and says, "I'm gonna do ten and turn around." Overall, the trooper testified that he observed six out of eight clues on the walk and turn test. During the third and final one leg stand test, the trooper testified that he only observed one out of four clues, as Mr. Baker would not put his hands back down to his side.

{¶11} Upon completion of field sobriety testing, Mr. Baker can be seen and heard in the video refusing to submit to a portable breathalyzer test, explaining that he just "did seventeen

f*****g field tests," requiring him to "walk back and forth, * * * clap, do ABC's backwards, and all types of s**t." He tells the trooper he is tired because he works seventeen hours a day. Trooper Sweazy testified that he then placed Mr. Baker under arrest for OVI. Based on Mr. Baker's overall cooperative attitude during the encounter, Trooper Sweazy testified that he saw no need to tow Mr. Baker's vehicle and, instead, Sergeant Grim moved the vehicle off the road and into a nearby parking lot as a courtesy. When they arrived at the OSHP post, Trooper Sweazy read the BMV 2255 form to Mr. Baker, and he again refused to submit to a breathalyzer test.

{¶12} In challenging the sufficiency of the evidence, Mr. Baker lists some general factors that are typically considered evidence of impairment, such as slurred speech, the inability to keep one's car in a marked lane, swerving or weaving, failure to pull one's vehicle over immediately, lack of coordination, stumbling, tactile difficulties, and difficulties with comprehension. He argues that there is no evidence of any of these factors here, and the only indicia of impairment present in this case were glassy, bloodshot eyes and an odor described by the trooper in the video as "a little bit of alcohol." He therefore argues that the evidence was insufficient to support a jury finding that he was impaired while driving beyond a reasonable doubt. Mr. Baker does not direct us, however, to any law necessarily *requiring* any of the aforementioned factors to be present for an OVI conviction to be based on sufficient evidence. Slurred speech, for example, although one of the classic indicia of intoxication, is not a prerequisite to a reasonable judgment that a person is under the influence. *Akron v. Smith*, 9th Dist. Summit No. 21519, 2003-Ohio-5773, ¶ 16.

{¶13} In determining whether a defendant was under the influence of alcohol, the jury may properly consider evidence of his appearance and behavior, including his ability to perceive,

make judgments, coordinate movements, and safely operate a vehicle. *See State v. Moine*, 72 Ohio App.3d 584, 586-587 (9th Dist.1991). Moreover, we have stated that, in OVI prosecutions, the state is not required to establish that a defendant was actually impaired while driving, but need only show an impaired driving ability. *State v. Hill*, 9th Dist. Summit No. 26519, 2013-Ohio-4022, ¶ 6. To prove impaired driving ability, the state may rely on physiological factors (e.g., odor of alcohol, glossy or bloodshot eyes, slurred speech, confused appearance) to demonstrate that a person's physical and mental ability to drive was impaired. *Id.* Furthermore, virtually any lay witness, without special qualifications, may testify as to whether an individual is intoxicated. *Id.*

{¶14} After reviewing the record, we conclude that the State presented sufficient evidence, if believed, to demonstrate that Mr. Baker was operating his vehicle while under the influence of alcohol. Mr. Baker was traveling almost twice the posted speed limit, but was admittedly unaware he was "going that fast[,]" and also failed to use his turn signal. Trooper Sweazy smelled a strong odor of alcohol emitting from Mr. Baker's vehicle during the traffic stop, which remained strong during their subsequent face-to-face interactions outside of the vehicle. Mr. Baker's eyes were glassy and bloodshot, and he openly admitted to coming from a bar and drinking two beers. There was both testimonial and video evidence that Mr. Baker was having a hard time concentrating, having trouble following directions, and interrupting and talking over the trooper. He performed poorly on two of the three field sobriety tests and failed to submit to two separate breathalyzer tests. Based on the totality of the circumstances in this case, we conclude that the jury could have reasonably determined the State proved Mr. Baker was operating his vehicle while under the influence of alcohol beyond a reasonable doubt.

{¶15} Mr. Baker's first assignment of error is overruled.

**ASSIGNMENT OF ERROR TWO**

MR. BAKER'S CONVICTION FOR OVI IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, MERITING A NEW TRIAL.

{¶16}  In his second assignment of error, Mr. Baker argues that his OVI conviction is against the manifest weight of the evidence.  We disagree.

{¶17}  This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.  This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).  *See also Otten* at 340.

{¶18}  Although Mr. Baker's merit brief sets forth the standard of review for a manifest weight challenge, he does not actually articulate a manifest weight argument.  *See State v. Pieronek*, 9th Dist. Wayne No. 18AP0031, 2019-Ohio-4305, ¶ 15.  *See also* App.R. 16(A)(7); *accord* Loc.R. 7(B)(7).  We are permitted to disregard this assignment of error for that reason alone. *See* App.R. 12(A)(2); *accord* Loc.R. 7(F).  Instead of making a manifest weight argument, Mr. Baker merely "reincorporates his argument from his [f]irst [a]ssignment of [e]rror" and claims "it is clear that the evidence presented at trial was *insufficient* for the jury to have found

all elements of OVI were proven beyond a reasonable doubt[,]" as "there is not *sufficient* evidence to show [he] was impaired." (Emphasis added.). However, as this Court has oft stated, "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Mr. Baker has not argued why his OVI conviction was against the manifest weight of the evidence, and we will not create or develop a manifest weight argument on his behalf. *See State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 47.

**{¶19}** Mr. Baker's second assignment of error is overruled.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN DENYING MR. BAKER'S MOTION FOR A MISTRIAL AFTER THE JURY HEARD EXTREMELY PREJUDICIAL AND INADMISSIBLE HEARSAY TESTIMONY.

**{¶20}** In his third assignment of error, Mr. Baker argues that the trial court erred in denying his motion for a mistrial after the jury was exposed to hearsay testimony. We disagree.

**{¶21}** There are no exact standards to apply in evaluating whether a trial court should declare a mistrial in any particular case. *State v. Hickman*, 9th Dist. Summit No. 27321, 2015-Ohio-4668, ¶ 21. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). "'In analyzing whether a defendant was deprived of a fair trial, an appellate court must determine whether, absent the improper remarks, the jury would have found the appellant guilty beyond a reasonable doubt.'" *State v. Allgood*, 9th Dist. Lorain No. 17CA011224, 2019-Ohio-738, ¶ 24, quoting *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 42 (10th Dist.). Thus, "[t]he essential inquiry on a motion for a mistrial is whether the substantial rights of the accused are

adversely affected." *Wadsworth v. Damberger*, 9th Dist. Medina No. 3024-M, 2000 WL 1226620, *2 (Aug. 30, 2000).

{¶22} Because the trial court is in the best position to determine whether the declaration of a mistrial is warranted under the circumstances as they have arisen in the courtroom, we afford great deference to the trial court's decision and will not second-guess such a determination absent an abuse of discretion. *State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 12. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying an abuse of discretion standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶23} Trooper Sweazy testified during direct examination that Mr. Baker admitted to drinking two Miller Lites. The prosecutor later referred the trooper to the dash cam video and inquired as to Mr. Baker's statement in the video: "I didn't say nothing about Bud Lights." In response, the trooper testified, "The Bud Light that he was referring to, Sergeant Grim, when he was moving the vehicle, seen a Bud Light can in the car." Defense counsel objected on the basis of hearsay, and the trial court sustained the objection. The court ordered the testimony about what Sergeant Grim said he saw in the car to be stricken from the record. The court then issued a curative instruction to the jury as follows: "The jury will disregard any testimony from Trooper Sweazy regarding what another trooper or sergeant said to him regarding a can of Bud Light being at the scene, so that was not to be considered as evidence by the jury and that part of the objection was sustained."

{¶24} After a break in the proceedings, but outside the presence of the jury, the prosecutor brought to the attention of the court that the dash cam video shows Mr. Baker at the outset of the traffic stop claiming, "There's no alcohol in my car." Thus, while acknowledging that the court had already ruled on the matter, the prosecutor argued this was a prior inconsistent statement and Trooper Sweazy's testimony regarding what Sergeant Grim told him about a can of Bud Light being in the car could be part of the record. Defense counsel then moved for a mistrial, but the trial court denied the motion. Prior to closing arguments, the trial court instructed the jury as follows: "If an answer is given to a question and the [c]ourt grants a motion to strike the answer, you are to disregard completely such question and answer and not consider them for any purpose."

{¶25} Mr. Baker concedes that the trial court sustained his objection to the testimony, but argues that the trial court should have granted him a mistrial because the jury nonetheless heard the trooper's testimony that a can of Bud Light was found in Mr. Baker's car. He notes that the record indicates the jury was "locked up, 50/50" after deliberations, and contends that the Bud Light testimony "forever tainted" the jury and likely prejudiced him by swaying some jurors toward a guilty verdict.

{¶26} We disagree with Mr. Baker, as the trooper's testimony regarding the Bud Light was "fleeting" or "brief and isolated" and was promptly objected to, stricken from the record, and followed by a curative instruction ordering the jury to disregard the testimony. *See State v. Gary*, 9th Dist. Wayne No. 12CA0014, 2012-Ohio-5813, ¶ 29, *Allgood* at ¶ 24. *See also State v. Mohamed*, 9th Dist. Medina No. 11CA0050-M, 2012-Ohio-3636, ¶ 26, quoting *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, ¶ 175 ("'[A] brief and isolated remark that was followed by a curative instruction' will likely not implicate unfair prejudice requiring a mistrial."). The

trial court again instructed the jury prior to closing arguments to completely disregard questions and answers that were stricken from the record and to not consider them for any purpose. "'A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge.'" *State v. Simpson*, 9th Dist. Lorain No. 11CA010138, 2012-Ohio-3195, ¶ 37, quoting *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). Mr. Baker directs us to no evidence in the record that the jury disregarded the court's instructions, and his belief that the Bud Light testimony was responsible for the jury ultimately reaching a guilty verdict sometime after it was deadlocked at 50/50 is pure speculation.

{¶27} We further disagree that this is a case where Mr. Baker was prejudiced and deprived of a fair trial. "In determining whether a defendant was deprived of a fair trial, a court must determine whether, absent the error or irregularity, 'the jury would have found the appellant guilty beyond a reasonable doubt.'" *State v. Edwards*, 9th Dist. Summit No. 28164, 2017-Ohio-7231, ¶ 13, quoting *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, ¶ 42 (10th Dist.). In light of the evidence presented against him at trial, as detailed in our discussion of his first assignment of error, we conclude that the jury would have still found Mr. Baker guilty of OVI if the trooper's statement regarding Bud Light had not been made. Accordingly, we cannot say that the trial court erred or abused its discretion in denying Mr. Baker's motion for a mistrial.

{¶28} Mr. Baker's third assignment of error is overruled.

### III.

{¶29} Mr. Baker's assignments of error are all overruled. The judgment of the Akron Municipal Court is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

BENJAMIN R. SORBER, Attorney at Law, for Appellant.

EVE V. BELFANCE, Director of Law, and BRIAN D. BREMER, Assistant Director of Law, for Appellee.