[Cite as *State v. Hirbawi*, 2020-Ohio-54.]

STATE OF OHIO        )                IN THE COURT OF APPEALS
                        )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN    )

STATE OF OHIO                     C.A. No.      18CA011252

    Appellee

    v.                           APPEAL FROM JUDGMENT
                            ENTERED IN THE
ZIYAD HIRBAWI               COURT OF COMMON PLEAS
                            COUNTY OF LORAIN, OHIO
    Appellant              CASE Nos.   15CR092114
                                     16CR093218

DECISION AND JOURNAL ENTRY

Dated: January 13, 2020

TEODOSIO, Presiding Judge.

{¶1} Appellant, Ziyad Hirbawi, appeals from his convictions for trafficking and possession of drugs in the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} The Lorain Police Department began investigating a local convenience store ("611 Market") owned by Mr. Hirbawi for allegedly buying and selling stolen merchandise. The police conducted five controlled sales of purportedly stolen merchandise to the store and, in turn, obtained a search warrant for the premises. During execution of the search warrant, the police seized a cigar box containing all twenty-dollar bills next to a large plastic bag containing a vegetable-like matter thought to be the illegal type of the drug "spice" from inside a cubbyhole, under an unused deli counter, in the back corner of the store. The substance was later identified by the crime lab as AB-CHMINACA, an illegal, synthetic cannabinoid.

{¶3}    The Elyria Police Department also began its own investigation into 611 Market following several overdoses from spice.  They conducted a controlled buy of spice from Mr. Hirbawi at his store, and thereafter obtained a search warrant for 611 Market.  During execution of the search warrant, the police discovered vegetable matter thought to be synthetic marijuana, packaging materials, a scale, a bottle of acetone, and cash.  The vegetable matter was later identified by the crime lab as AB-CHMINACA.

{¶4}    Mr. Hirbawi was charged in case number 15CR092114 with one count of trafficking in drugs, a felony of the second degree, one count of possession of drugs, a felony of the second degree, one count of trafficking in drugs, a felony of the fourth degree, and one count of drug paraphernalia offense, a misdemeanor of the fourth degree.  In case number 16CR093218, he was charged with one count of trafficking in drugs, a felony of the second degree, one count of possession of drugs, a felony of the second degree, one count of receiving stolen property, a felony of the fifth degree, and one count of possession of criminal tools, a felony of the fifth degree.

{¶5}    The two cases were consolidated and the matter proceeded to a bench trial.  The trial court ultimately found Mr. Hirbawi guilty of all counts.  The court sentenced him to an aggregate total of two years in prison, but granted his motion for bond pending appeal.

{¶6}    Mr. Hirbawi now appeals only from his trafficking and possession convictions, and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

APPELLANT'S CONVICTIONS FOR TRAFFICKING IN DRUGS AND POSSESSION OF DRUGS ARE BASED ON INSUFFICIENT EVIDENCE.

**{¶7}** In his first assignment of error, Mr. Hirbawi argues that, due to his mistake of fact in believing he was selling a legal type of spice, the State could not present sufficient evidence that he *knowingly* trafficked or possessed illegal drugs. We disagree.

**{¶8}** Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

**{¶9}** Mr. Hirbawi was convicted of trafficking in drugs under R.C. 2925.03(A), which states: "No person shall knowingly * * * (1) Sell or offer to sell a controlled substance or a controlled substance analog; (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." He was also convicted of possession of drugs under R.C. 2925.11(A), which states: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶10}** Mr. Hirbawi argues that the State presented insufficient evidence to demonstrate that he knowingly trafficked and possessed the illegal type of spice. Because he has not

challenged his convictions for the remaining counts, and only challenges the knowingly element of his trafficking and possession offenses, we will likewise limit our analysis accordingly. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶11} Mr. Hirbawi raised mistake of fact as a defense at trial and, in turn, now argues on appeal that his mistake of fact—a mistaken belief that the spice he was selling and possessing was of the legal variety—precluded the State from presenting sufficient evidence that he knowingly trafficked and possessed drugs. "'Mistake of fact is widely recognized as a defense to specific intent crimes * * * since, when the defendant has an honest purpose, such a purpose provides an excuse for an act that would otherwise be deemed criminal. * * * When [the] defendant, due to a mistake of fact, does not have the specific *mens rea* required by the statute, the maxim *ignorantia facti excusat* applies.'" (Emphasis sic.) *State v. Brumback*, 109 Ohio App.3d 65, 75 (9th Dist.1996), quoting *State v. Snowden*, 7 Ohio App.3d 358, 363 (10th Dist.1982).

{¶12} A review for sufficiency of the evidence, however, does not apply to affirmative defenses because this review does not consider the strength of defense evidence. *State v. Mohamed*, 9th Dist. Medina No. 11CA0050-M, 2012-Ohio-3636, ¶ 7. Because a claim of insufficient evidence only challenges the sufficiency of the State's evidence, Mr. Hirbawi cannot challenge the fact finder's rejection of his mistake of fact defense on the basis of insufficiency of the evidence. *See id.*, citing *State v. Campbell*, 10th Dist. No. 07AP-1001, 2008-Ohio-4831, ¶ 21, citing *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, ¶ 15 (4th Dist.) ("An

affirmative defense does not negate the legal adequacy of the state's proof for purposes of submitting it to the jury."). Nevertheless, after a review of the record, this Court determines that the State presented sufficient evidence, if believed, that Mr. Hirbawi knowingly trafficked and possessed illegal drugs.

{¶13} Detective Jacob Morris of the Lorain Police Department testified that he began an investigation into 611 Market in October of 2014 following allegations that the store had been purchasing stolen property. In 2015, the police conducted several controlled sales of purportedly stolen merchandise by a confidential informant to 611 Market. In later executing a search warrant at the store on June 3, 2015, Detective Morris testified that the police discovered a large bag containing a vegetable-like matter—believed to be illegal "spice"—near a cigar box containing all twenty-dollar bills in a cubbyhole underneath an out-of-use, dusty, deli counter, located away from the store's cash register, in the opposite corner of the room. The detective testified that they also found a bag containing several empty Ziploc bags as well as several opened, empty, manufacturer packages of spice on top of an out-of-use, stand up cooler in an adjacent storage room, the top of which could only be seen if using a stepstool ladder. He testified that these items were all in an "out-of-view area[,]" unlike the regular merchandise for sale and on display in the store. Detective Morris testified that Mr. Hirbawi admitted the spice was his, admitted to repackaging and selling it for $20.00 per bag, and said he was "just trying to make some money." Mr. Hirbawi told the detective he would retrieve the spice from the back of the store and ring it up at the cash register under a generic term, such as "taxable grocery" or "taxable item." The detective testified that Mr. Hirbawi could not produce any order forms, bills of sale, or anything to trace the legitimacy of his spice purchases, but instead claimed he would go to a website and "[buy] it off a guy who he contacted when he needed some."

{¶14} Detective Todd Straub of the Elyria Police Department testified that, in July of 2015, he began an unrelated investigation following seven-to-ten overdoses from spice over the Fourth of July weekend, which included several juveniles. He testified that his investigation led to two different stores as the source of the spice, including 611 Market. The police conducted a controlled buy, in which a wired confidential informant bought two packs of spice for $40.00 from Mr. Hirbawi inside of 611 Market. Detective Straub testified that the video recording of the buy from the wired informant reveals a "discreet" hand-to-hand transaction, i.e., a quick exchange back and forth that was not made at the front counter or cash register. The detective testified that, in his experience, this indicated Mr. Hirbawi was not selling spice out in the open and did not want other customers knowing he was selling "[s]pice or synthetic marijuana or something that could potentially be illegal."

{¶15} Elyria police executed a search warrant at 611 Market on July 14, 2015. Detective Straub testified that, underneath the front counter, they discovered a cigar box containing several baggies of vegetable matter suspected to be synthetic marijuana. Right behind the doorway to the back storage room, police found a digital scale on a table in plain view. Inside a drawer near the scale, they found some spice packaging. In another back room, they found multiple bags containing large amounts of the same packaging material. Above a drop ceiling tile, they found a two-gallon "foil Ziploc bag" containing more green, vegetable matter. Inside of a first-aid kit hanging on the wall, they found more vegetable matter along with some cash. They also found a bottle of acetone on the floor in a back room, which Detective Straub testified is commonly used in the processing and manufacturing of spice.

{¶16} According to the detective, the location of all of the aforementioned items in comparison to the items for sale in plain view for normal consumer sales indicated that the

sellers of the spice "didn't want everyday or every customer to come in there and see it, be able to purchase it because they were aware that it was most likely not legal." Detective Straub learned from an employee of 611 Market—who was indicted separately, but whose cases were tried jointly with Mr. Hirbawi's cases—that spice was sold and restocked daily at the store.

{¶17} Elizabeth Doyle, a forensic drug analyst in the Lorain County Crime and Drug Lab, testified that, in July of 2015, she performed lab testing on the "vegetable matter substance" she received from the police. She determined, to a reasonable degree of scientific certainty, that the substance tested positive for AB-CHMINACA, and likewise recorded her findings in her written lab report. She testified that the Drug Enforcement Agency has listed AB-CHMINACA as a Schedule I controlled substance. According to Ms. Doyle, "[i]t was placed in temporary Schedule I in December of 2014 and permanent Schedule I in January of 2015." *See* 21 C.F.R. 1308.11(d)(69).

{¶18} After viewing the evidence in a light most favorable to the prosecution, this Court concludes that the State presented sufficient evidence, if believed, to establish that Mr. Hirbawi knowingly trafficked and possessed illegal drugs, rather than a substance he believed to be legal. *See State v. Jackson*, 9th Dist. Summit Nos. 27132, 27200, 27133, and 27158, 2015-Ohio-5246, ¶ 125. The trial court, as trier of fact, could reasonably infer Mr. Hirbawi's state of mind from the surrounding circumstances in this case. The drugs were neither on display for the general public to see nor kept solely behind the front counter like other commonly stolen items, but were instead completely hidden from sight in various places throughout the store, e.g., in a cubbyhole under an unused deli counter in the back of the store, in back storage rooms, inside a first-aid kit hanging on the wall, and above drop ceiling tiles. *See id.* (noting the location of the drugs in a back room, not on display for the general public). One could also draw conclusions about Mr.

Hirbawi's culpability based on the fact that he claimed to ring up his sales of spice at the cash register as a generic "taxable grocery" or "taxable item." *See id.* (noting the store's cash register had a button labeled "Joy" for sales of that particular drug, which would instead ring up as the sale of a t-shirt). Accordingly, based on our review of the record and the evidence presented at trial, we conclude that a rational trier of fact could have reasonably determined the knowingly mens rea of both trafficking and possession of illegal drugs was proven beyond a reasonable doubt. *See Jenks* at paragraph two of the syllabus.

{¶19} Mr. Hirbawi's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶20} In his second assignment of error, Mr. Hirbawi argues that his convictions for trafficking and possession of drugs were against the manifest weight of the evidence because the evidence presented at trial "weighs heavily in favor of the fact that [he] did not know the substance he possessed and sold at his store was illegal." We disagree.

{¶21} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary

power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶22} Mr. Hirbawi took the witness stand in his own defense and admitted to selling spice at 611 Market. Although he told the police he bought the spice online from a guy he would contact when he needed some, Mr. Hirbawi testified at trial that a Chicago salesman who would sell him incense and "all potpourri types of stuff" sold him the spice. According to Mr. Hirbawi, the salesman assured him it was one hundred percent legal. Mr. Hirbawi testified that he read the spice packages and recalled seeing "not for human consumption" on the label. He could not recall the salesman's name and could not provide any contact information for him, but testified that he simply called the man "Buddy." He testified that, at one point, Buddy told him the spice he currently had in the store was no longer legal, so Buddy exchanged the older spice for newer, legal spice. Mr. Hirbawi recalled a similar situation occurring with Four Loko, a drink he would sell in his store until it was "outlawed" and the salesman came back to take it all off of the shelves. On cross-examination, he admitted that the Four Loko he had for sale in his store was never hidden above any drop ceiling tiles. Mr. Hirbawi further explained that he kept spice hidden in the deli counter because "[i]t's stuff that people would want to steal * * *." He testified that he would mix or cut the spice with oregano to "make some extra money." He would then bring however many packets of spice he believed he would sell that day to the front counter and keep them on a shelf underneath the counter, near 5-hour Energy drinks and electronic cigarettes, which were products commonly stolen when on display.

{¶23} Mr. Hirbawi also directs us to testimony from both detectives and the forensic drug analyst that they were unable to tell the difference between legal spice and illegal spice

simply by its appearance. As we outlined in our sufficiency discussion above, however, there was a wealth of circumstantial evidence tending to show that Mr. Hirbawi acted with the requisite degree of culpability. *See Jackson* at ¶ 134. The detectives both testified as to their suspicions the drug was illegal based on the totality of the circumstances. The spice was not simply for sale behind the front counter as a theft deterrent, but was instead hidden throughout the store. Mr. Hirbawi could not produce any documentation for his purchases of spice, nor could he provide any contact information for the mysterious salesman who supplied him with the spice. A confidential informant conducted a discreet hand-to-hand purchase of spice from Mr. Hirbawi, and Mr. Hirbawi admitted that he would ring up his sales of spice only as a "taxable grocery" or "taxable item."

{¶24} "[Synthetic cannabinoids] are marketed under hundreds of different brand names, including 'Spice[]' * * *." 80 Fed.Reg. 5042-01, 5043, effective Jan. 30, 2015 (adding AB-CHMINACA to the schedule of controlled substances). Mr. Hirbawi admitted he purchased the spice from an unknown incense/potpourri salesman from Chicago, and noted the label on the packages read: "[N]ot for human consumption." However, "[t]he drug products laced with [synthetic cannabinoids] are often sold under the guise of 'herbal incense,' 'potpourri,' etc., using various product names and routinely labeled 'not for human consumption.'" *Id.* These products "are marketed as a 'legal high' or 'legal alternative to marijuana' and are readily available over the Internet, in head shops, and in convenience stores." *Id.* "There is an incorrect assumption that these products are safe and further, that mislabeling these products as 'not for human consumption' is a legal defense to criminal prosecution." *Id.*

{¶25} While Mr. Hirbawi testified that he believed his spice was of the legal variety, this Court has stated that "'[a] conviction may be upheld even when the evidence is susceptible to

some possible, plausible, or even reasonable, theory of innocence.'" *State v. Russo*, 9th Dist. Summit No. 22768, 2006-Ohio-2172, ¶ 27, quoting *State v. Cremeans*, 9th Dist. Summit No. 22009, 2005-Ohio-261, ¶ 7. We have consistently held that "'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The trial court was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. The trial court in this matter chose to believe that Mr. Hirbawi was knowingly trafficking and possessing illegal spice. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶26} Accordingly, upon review of the record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot say that the trial court, as finder of fact, in resolving any conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Mr. Hirbawi has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶27} Mr. Hirbawi's second assignment of error is overruled.

III.

{¶28} Mr. Hirbawi's first and second assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MICHAEL STEPANIK, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and DANIELLELA BEARDEN, Assistant Prosecuting Attorney, for Appellee.